```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```

|  |  |  |
|---|---|---|
| JEREMY KOON, | ) | |
|     Petitioner, | ) ) ) | |
| vs. | ) ) | No. 10-2574-STA-cgc |
| JUAN D. CASTILLO, | ) ) ) | |
|     Respondent. | ) ) | |

```
                 ORDER TO MODIFY THE DOCKET
       ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2241
          ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
                              AND
      ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL
```

On August 5, 2010, Petitioner Jeremy Koon, Bureau of Prisons ("BOP") inmate registration number 17432-075, who is currently an inmate at the Federal Correctional Institution — Medium in Petersburg, Virginia, filed a *pro se* petition pursuant to 28 U.S.C. § 2241, accompanied by a motion seeking leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.)[1] The Petition seeks expungement of a disciplinary conviction for possessing an intoxicant and restoration of forfeited good conduct credit. (ECF No. 1.) In an order issued on August 13, 2010, the Court granted leave to proceed *in forma pauperis*. (ECF No. 3.) On October 5, 2010, the Court

---

[1] The Clerk is directed to modify the docket to reflect Petitioner's current address and to mail a copy of this order to him at that address.

ordered Respondent to file a response. (ECF No. 4.) Respondent filed his Response to Petition for Writ of Habeas Corpus on November 30, 2010. (ECF No. 11.) Petitioner did not file a Reply.[2]

This case arises from a disciplinary conviction incurred by Petitioner while he was confined at the Federal Correctional Institution in Memphis, Tennessee. ("FCI Memphis"). The facts appear to be as follows:[3]

>   1.  Petitioner is a federal inmate currently incarcerated in FCI Memphis and has been so designated since June 4, 2007. (Declaration of Thomas D. McGee, dated Nov. 29, 2010 ("McGee Decl."), ¶ 3 & Att. A, ECF No. 11-1.)[4]
>
>   2.  Petitioner is serving a one hundred twenty (120) month sentence for bank robbery in violation of 18 U.S.C. § 2113(a). (id. ¶ 4 & Att. B.)

---

[2] On June 10, 2011, Petitioner filed a Motion for Leave to Supplement and Amend 28 U.S.C. § 2241 Petition and Motion that sought to add, as an additional ground for relief, a claim that his guilty plea was not voluntary and intelligent in light of the Supreme Court's decision in Johnson v. United States, 559 U.S. 133, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010). (ECF No. 12.) On June 21, 2011, Respondent filed a Motion to Strike Plaintiff's [sic] Motion for Leave to Supplement and Amend (ECF No. 13), which stated that the motion had been filed in the wrong case. On June 23, 2011, Respondent filed his Response in Opposition to Motion for Leave to Supplement and Amend 28 U.S.C. § 2241 Petition and Motion (ECF No. 14), that attached a letter from Petitioner stating, in effect, that he does not intend to amend the claims asserted in the instant case.

On June 21, 2011, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asserted that his guilty plea was not voluntary and intelligent in light of Johnson v. United States. (§ 2241 Habeas Corpus Pet. Form to be Used by Prisoners in Actions Under 28 U.S.C. § 2241 or in Actions Challenging Removal Proceedings at 3-4, Koon v. Castillo, No. 11-2516-STA-dkv (W.D. Tenn.), ECF No. 1.) In an order issued on January 20, 2012, the Court denied the Motion to Supplement and Amend because the issue presented was addressed in Case Number 11-2516-STA-dkv (W.D. Tenn.). (ECF No. 15.) That order also denied the motion to strike. (Id.)

[3] Although Petitioner has not responded to the statement of material facts submitted by Respondent, the Court has attempted, by examining the Petition, to identify the areas of factual agreement.

[4] As previously noted, see supra n.1, Koon is no longer incarcerated at FCI Memphis.

3. On February 16, 2009, at approximately 6:30 a.m., Petitioner received a breathalyzer test and tested positive with a blood alcohol level of .298. Petitioner received an additional breathalyzer test at approximately 6:55 a.m. and again tested positive with a blood alcohol level of .298. Staff escorted Petitioner to Health Services where he was examined by a Physician's Assistant ("P.A.") and then placed in the Special Housing Unit. (Id. ¶¶ 5-6 & Atts. C & D.)

4. During the P.A.'s examination, Petitioner stated that he "fell out of the bed and hit my head on the floor when trying to stand up to use the bathroom." The P.A. noted that "[patient] with smell of alcohol on breath will [sic] speaking and laughing loudly." (Id. Att. E.)

5. On February 16, 2009, Petitioner received incident report 1834702 for prohibited act code 222, "Making, Possessing or Using Alcohol." (Id. Att. C.)

6. Petitioner received a copy of incident report 1834702 on February 16, 2009, at approximately 8:30 p.m. (Id.)

7. On February 18, 2009, staff conducted an investigation into incident report 1834702. The staff member advised Petitioner of his rights and he stated that he understood them. Petitioner stated "I am innocent, and I was not drinking. I am diabetic, and my blood sugar was low." Based on the evidence provided in the incident report and the statement provided by the inmate, the investigating staff member concluded that Petitioner's actions warranted an incident report and referred the incident report to the Unit Disciplinary Committee ("UDC") for a hearing and dispensation. (Id.)

8. On February 27, 2009 at approximately 2:20 p.m., the UDC held a hearing and decided to refer the matter to the DHO. The UDC recommended Petitioner be sanctioned with the loss of sixty (60) days good conduct time. (Id.)

9. On February 27, 2009, at approximately 2:20 p.m., Petitioner received Notice of Disciplinary Hearing Before the DHO regarding incident report 1834702. On the Notice of Discipline Hearing form, Petitioner noted that

he did not wish to have a staff representative or witnesses present at the hearing. (Id. Att. F.)

10. On February 27, 2009, at approximately 2:20 p.m., Petitioner received his Inmate Rights at Discipline Hearing form. (Id. Att. G.)

11. The DHO held Petitioner's hearing on March 12, 2009. Petitioner provided a statement to the DHO that his "sugar bottomed out in the cell that morning" and denied the use of alcohol. In addition to the Incident Report and investigation, the DHO considered a statement from the Chief Pharmacist verifying that neither Petitioner's medical condition nor his medications would have caused a positive breathalyzer reading. (Id. Att. H.)

12. Based on the greater weight of the evidence, the DHO found Petitioner had committed the prohibited act of making, possessing, or using intoxicants. The DHO sanctioned Petitioner with the disallowance of 40 days good conduct time, forfeiture of 40 days non-vested good conduct time, 180 days social visiting restriction, and 180 days telephone restriction. The DHO noted that the sanctions imposed in Petitioner's case "were enhanced because . . . this was a repetitive act based on the findings [Petitioner] had committed this same act on at least two previous occasions during the reckoning period." The DHO further explained that "[p]revious sanctions appear to not have had the desired effect of changing [Petitioner's] behavior and justify the imposition of more severe penalties for continuing to commit this prohibited act." (Id.)[5]

In his Petition, Koon argues that the evidence was insufficient to convict him of the disciplinary charge. (ECF No. 1 at 3.) He asserts that "I have a medical condition and I was given some medication that would have a tendency to cause a false positive reading for intoxicants. This was verified by PA Hargrove.

---

[5] Koon "received sanctions for violating conduct code 222, Making, Possessing or Using Intoxicants, during four separate Disciplinary Hearings between August 2008 and June 2009." Id. ¶ 11; see id. Att. I (Chronological Disciplinary Record).

4

I was written an [Incident Report] for allegedly being intoxicated due to effects of the medication." (Id.) Koon also asserts that "the Incident Report allegedly written by Officer Brooks was in fact not written by her but by someone else who used her name for writing this [Incident Report]." (Id.)

Respondent's brief (ECF No. 11 at 2-5) describes the procedures used by the BOP to discipline federal prisoners. *See also* 18 U.S.C. § 4042(a)(3) (authorizing BOP to discipline prisoners); 28 C.F.R., Part 541 (disciplinary procedures).[6]

> According to these rules, when BOP staff have a reasonable belief that an inmate has violated a Bureau of Prisons regulation, staff prepare an incident report. 28 C.F.R. § 541.14(a). Staff provide the inmate with a written copy of the charges against him, ordinarily within twenty-four hours of the time staff become aware of the inmate's involvement in the incident. 28 C.F.R. § 541.14(a), (b)(2).
>
> An investigating officer reads the charges to the inmate and asks for the inmate's statement concerning the incident. The officer advises the inmate of the right to remain silent, informing him that his silence may be used to draw an adverse inference against him. The officer further explains that the inmate's silence alone may not be used to support a finding that the inmate committed a prohibited act. The officer conducts an investigation and records all steps and actions taken on the incident report. All relevant materials are then forwarded to the Unit Disciplinary Committee (hereinafter UDC) for an initial hearing. 28 C.F.R. § 541.14(b)(2).
>
> The UDC holds the initial hearing, ordinarily within three work days from the time staff became aware of the

---

[6] The following discussion refers to the version of the regulations in effect in 2009, when Koon's disciplinary hearing occurred. The rules were amended and streamlined effective March 1, 2011. *See* Inmate Discipline Program, Special Housing Units: Subpart Revision and Clarification, 75 Fed. Reg. 76,261-01 (Dec. 8, 2010).

5

inmate's involvement in the incident (excluding the day staff became aware of the inmate's involvement in the incident, weekends and holidays). The inmate is entitled to be present at the initial hearing, except during deliberations of the decision makers, or when institutional security would be jeopardized by the inmate's presence. The inmate is entitled to make a statement and to present documentary evidence on his own behalf at the initial hearing. 28 C.F.R. § 541.15(b), (c), (d).

After considering all of the evidence presented at the hearing, the UDC makes a decision which must be based on at least some facts, and if there is conflicting evidence, based on the greater weight of the evidence. The phrase "some facts" refers to facts indicating the inmate committed the prohibited acts, while the phrase "greater weight of the evidence" refers to the merits of the evidence, not to its quantity or the number of witnesses testifying. 28 C.F.R. § 541.15(f).

The UDC either finds the inmate committed the prohibited acts as charged and/or a similar prohibited act if reflected in the incident report, finds the inmate did not commit the prohibited act charged, or refers the case to the Disciplinary Hearing Officer (DHO) for further proceedings. 28 C.F.R. § 541.15(f). When an alleged violation of the Bureau of Prisons' rule is serious and warrants consideration for other than minor sanctions, the UDC refers the charges to the DHO for further proceedings. When charges are referred to the DHO, the UDC forwards copies of all relevant documents to the DHO with a brief statement of reasons for the referral, along with any recommendations for appropriate disposition if the DHO finds the inmate committed the act charged. 28 C.F.R. § 541.15(h).

When charges are referred to the DHO, the UDC advises the inmate of the rights afforded at the DHO hearing and asks the inmate to indicate a choice of staff representative, if any, and the names of witnesses the inmate wishes to cal to testify at the hearing and what testimony they are expected to provide. 28 C.F.R. § 541.15(i). The inmate lists on the Notice of Disciplinary Hearing Before the Discipline Hearing Officer form, all witnesses requested to appear. Id.

>At the hearing before the DHO, the inmate is entitled to make a statement and to present documentary evidence on his own behalf. The inmate also has the right to submit names of requested witnesses and have them called to testify and to present documents on the inmate's behalf, provided the calling of witnesses or the disclosure of documentary evidence does not jeopardize or threaten institutional or an individual's security. 28 C.F.R. § 541.17(c).
>
>The DHO considers all evidence presented at the hearing and bases his decision on at least some facts, and if there is conflicting evidence, on the greater weight of the evidence. The DHO determines the inmate either committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report, or finds the inmate did not commit the prohibited act charged. 28 C.F.R. § 541.17(f).
>
>The DHO prepares a report of the proceedings, which is not required to be verbatim. The record documents the advisement of inmate's rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO. It also includes a brief statement of the reasons for the sanctions imposed. The DHO ordinarily provides the inmate a written copy of the decision and disposition within ten days of the DHO's decision. 28 C.F.R. § 541.17(g).

(ECF No. 11 at 2-5 (footnotes omitted).) These procedures were followed in Koon's case.

In Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), the Supreme Court held that, where a prisoner is charged with a disciplinary offense that may result in loss of good time credit, due process requires (i) written notice of the charges at least twenty-four (24) hours prior to the hearing, id. at 563-64, 94 S. Ct. at 2978; (ii) the opportunity to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or

7

correctional goals," id. at 566, 94 S. Ct. at 2979; and (iii) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action, id. at 563, 564-65, 94 S. Ct. at 2878, 2879.

Moreover, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454, 105 S. Ct. 2768, 2773, 86 L. Ed. 2d 356 (1985) (internal quotation marks & citation omitted); see also id. at 455-56, 86 L. Ed. 2d at 2774 ("We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. . . . Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.").[7]

---

[7] These protections are required only when a liberty interest is at stake. A prison regulation that does not affect the duration of an inmate's confinement will not be found to create a liberty interest unless it involves a "restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995) (citations omitted).

A failure to comply with a procedural rule that is not required by Wolff does not violate due process. *See, e.g.*, Guile v. Ball, No. 12-1843, 2013 WL 1629288, at *2 (6th Cir. Apr. 17, 2013) ("The Defendants complied with the requirements set forth in Wolff. Although Guile did not receive the incident report or the results of the rape kit, if one was performed, he is not entitled to full discovery as he would be at a criminal trial."); Thompson v. Stapleton, 403 F. App'x 986, 987 (6th Cir. 2010) ("[T]he minimal due-process rights afforded a prisoner in disciplinary hearings do not include access to interrogatory responses. Moreover, Thompson–Bey had no due-process right to confront or cross-examine witnesses, and was not even entitled to a hearing investigator. . . . Wolff requires advance notice of the charges, not the evidence."); Rojas v. Driver, Civil Action No. 5:06CV88, 2007 WL 2789471, at *4 (N.D. W. Va. Sept. 24, 2007) (holding that "the prisoner does not have a liberty interest in the non-Wolff procedures at issue"), *aff'd mem.*, 267 F. App'x 302 (4th Cir. 2008) (per curiam); *see also* Belt v. U.S. Dep't of Justice, No. 4:CV-10-1652, 2010 WL 5095860, at *4 (M.D. Pa. Dec. 8, 2010) ("To the extent Belt claims that the BOP failed to comply with the requirements of 28 C.F.R. §§ 541.12-541.23, his claim lacks merit. . . . While the regulations referenced by Belt do set forth the structure and guidance for prison disciplinary procedures, an inmate's due process rights at a DHO hearing are guided by Wolff.

As set forth above, Belt received all due process rights in the preparation for and conducting of his DHO hearing.").

In this case, Koon was charged with a "High Category" offense which could result in the forfeiture or disallowance of good conduct time. 28 C.F.R. §§ 541.13(a)(2) & Table 3 (2009).[8] Because of the severity of the potential punishment, Koon was entitled to the procedural protections set forth in Wolff. He received written notice of the charge on February 16, 2009, at least twenty-four (24) hours before both the UDC and the DHO hearings. (Factual Finding ("FF") 6.) He was informed that there would be a DHO hearing and of his rights at that hearing. (FF 9 & 10.) Koon indicated that he did not wish to call witnesses on his behalf. (McGee Decl. Att. F.) Koon did not present any witnesses or documentary evidence at the DHO hearing other than his own testimony. (FF 11; see McGee Decl. Att. H.) After the hearing, Koon received a written statement by the DHO describing the evidence relied on and the reasons for the disciplinary action. (Id.) Therefore, Petitioner has received the due process required by Wolff.

Koon argues that the Incident Report was prepared by someone other than the officer who signed it (ECF No. 1 at 3), but he has

---

[8] "BOP regulations divide violations of prison rules by severity, from 'Greatest Category' (Code Nos. 100-199); 'High Category' (Code Nos. 200-299); 'Moderate Category' (Code Nos. 300-399); and 'Low Moderate Category' (Code Nos. 400-499." Hernandez v. Sepanek, Civil Action No. 12-CV-51-HRW, 2013 WL 556378, at *1 n.2 (E.D. Ky. Feb. 11, 2013).

provided no factual support for that assertion. Koon also does not explain how that fact, if proven, would invalidate his disciplinary conviction. Koon does not deny that the breathalyser tests were administered and the results are accurately stated in the Incident Report. Instead, Koon testified that the breathalyser readings were false positives caused by his low blood sugar. The DHO also considered the statement of a medical doctor that the breathalyser results could not be attributed to Koon's medical condition or any medication he was taking.[9]

The evidence presented at the DHO hearing satisfied the "some evidence" standard. The DHO report summarized the evidence relied on by the hearing officer:

> Based on the greater weight of the evidence the DHO finds KOON committed the prohibited act of making, possessing, or using intoxicants. To make this finding the DHO relies on the reporting officers' statements contained in the Incident Report as follows:
>
> > On the above date at approx. 6:40 am, while conducting a breathalyzer test on inmate Koon # 17432-075 it tested positive with a reading of .298. A second test was conducted 15 minutes later at 6:55 am and that test also was positive with a reading of .298. Inmate Koon was escorted to the institutional hospital were [sic] he was seen by PA Hargrove and then placed in SHU.
>
> The DHO considered KOON's denial of having been drinking and his suggestion that the positive breath tests were related to his medical condition. This hearing, initially

---

[9] Koon says that his conditions could be corroborated by P.A. Hargrave (ECF No. 1 at 3), but he chose not to call Hargrave to testify. In light of Hargrave's written notes, which state that Koon had a "smell of alcohol on breath while speaking and laughing loudly" (FF 11 & Att. E), it does not appear that Hargrave would have provided favorable testimony.

11

> held 03-05-2009, at 1010 hours, was suspended to contact Health Services staff to confirm to [sic] relationship between KOON's medical condition and the positive breath tests for alcohol consumption. The hearing resumed on 03-12-2009, after Health Services staff reported the breathalyser uses fuel cell technology which is not affected by fluctuations of the subjects [sic] blood sugar levels when determining the alcohol content of a subject's blood stream. Therefore, relying on the judicial notice given to the technology used for alcohol testing, the DHO concludes KOON's chronic medical condition has no effect on the positive alcohol breath tests obtained by the reporting officer. The DHO gives no weight to KOON's defense [that] his medical condition and not his consumption of intoxicants was responsible for the positive alcohol readings obtained by the reporting officer. Accordingly, the DHO gives greater weight to the reporting officer's description of the incident and the positive breath test results and finds KOON committed the prohibited act of making, possessing, or using intoxicants.

(McGee Decl. Att. H.)[10] The DHO report reflects that some evidence was presented in support of the conclusion that Petitioner had committed the prohibited act. The DHO also explained why he reached that conclusion despite Petitioner's testimony at the hearing.

Because Koon is not entitled to relief under 28 U.S.C. § 2241, the petition is DENIED. Judgment shall be entered for Respondent.

Federal prisoners who file petitions pursuant to 28 U.S.C. § 2241 challenging their federal custody need not obtain certificates of appealability under 28 U.S.C. § 2253(c)(1). Durham v. United

---

[10] The DHO also relied on a "[m]essage from Dr. Meyers, verifying KOON's medication or medical condition would not cause a positive breathalyzer reading." (Id.) A previous version of the Disciplinary Hearing Officer Report omitted the word "not" in the preceding sentence. (ECF No. 1 at 15; see also McGee Decl. Att. H at 3 ("In response to KOON's administrative appeal, the DHO revised this report 09-22-2009, to correct a typographical error in Section III(D) and to clarify the information regarding the effect KOON's chronic medical condition would have on the breath tests for intoxicant use.").)

States Parole Comm'n, 306 F.3d 225, 229 (6th Cir. 2009); Melton v. Hemingway, 40 F. App'x 44, 45 (6th Cir. 2002) ("a federal prisoner seeking relief under § 2241 is not required to get a certificate of appealability as a condition to obtaining review of the denial of his petition"); *see also* Witham v. United States, 355 F.3d 501, 504 (6th Cir. 2004) (28 U.S.C. § 2253 "does not require a certificate of appealability for appeals from denials of relief in cases properly brought under § 2241, where detention is pursuant to federal process").

A habeas petitioner seeking to appeal must pay the $455 filing fee required by 28 U.S.C. §§ 1913 and 1917. To appeal *in forma pauperis* in a habeas case under 28 U.S.C. § 2241, the petitioner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade v. Sparkman, 117 F.3d 949, 952 (6th Cir. 1997). Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the petitioner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5).

In this case, because Petitioner is clearly not entitled to relief, the Court determines that any appeal would not be taken in

13

good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[11]

    IT IS SO ORDERED this 10th day of May, 2013.

                                      **s/ S. Thomas Anderson**
                                      S. THOMAS ANDERSON
                                      UNITED STATES DISTRICT JUDGE

---

[11] If Petitioner files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.